# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7008 | **DATE** | 12/31/2003 |
| **CASE TITLE** | Cummins-Allison Corp. vs. Glory Ltd., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The defendants' motion to modify protective order (doc. # 129) is GRANTED in part and DENIED in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| ✓ Notices mailed by judge's staff. | JAN 0 2 2004 |
| Notified counsel by telephone. | date docketed |
| Docketing to mail notices. | |
| Mail AO 450 form. | docketing deputy initials |
| Copy to judge/magistrate judge. | |
| | date mailed notice |
| mm7 courtroom deputy's initials | Date/time received in central Clerk's Office mailing deputy initials |

**Document Number**

**135**

**DOCKETED**
JAN 0 2 2004

CUMMINS-ALLISON CORP.,  )
an Indiana Corporation,  )
                         )
        Plaintiff,       )
                         )      No.  02 C 7008
vs.                      )
                         )      District Judge Ronald A. Guzman
GLORY LTD., a Japanese Corporation;  )
GLORY SHOJI CO., LTD., a Japanese    )      Magistrate Judge Sidney I. Schenkier
Corporation; and GLORY (U.S.A.) INC., )
a California Corporation,            )
                         )
        Defendants.      )

## MEMORANDUM OPINION AND ORDER

In this opinion, we address an issue that was raised early in the litigation but, until recently, has lain dormant: the right of the plaintiff, Cummins, to show certain documents produced in this litigation by the defendants (collectively referred to as "Glory"), to Stephen G. Rudisill and Paul R. Kitch, attorneys who are both counsel of record for Cummins in this lawsuit and counsel who prosecute patent applications for Cummins.

Glory has filed a motion to modify the stipulated protective order entered October 10, 2002 (doc. # 129). In its motion, Cummins seeks to do the following: (a) add a new provision (paragraph 3(c)) creating a class of documents entitled "Confidential – Patent Prosecution Information," which would consist of information that is "Highly Confidential" as defined by the protective order, and that additionally relates to "non-public patent applications and related communications or design or to research and development activities concerning current or future products"; (b) add a new provision (paragraph 9(b)) prohibiting Messrs. Rudisill and Kitch from receiving Glory's "Confidential – Patent Prosecution Information"; (c) in the alternative, provide in proposed

135

paragraph 9(b) that if Messrs. Rudisill or Kitch receive such documents, they would be barred from participating in the prosecution of any patent applications "relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals"; and (d) make other, related changes to paragraphs 11, 12 and 25 of the protective order.

Cummins does not object to the proposed new classification of "Confidential – Patent Prosecution Information," but objects to barring Messrs. Rudisill and Kitch from receiving them. Cummins further objects to any limitations on the ability of Messrs. Rudisill or Kitch to prosecute patent applications if they receive "Confidential – Patent Prosecution Information"; in the alternative, Cummins argues that if limitations are imposed, they should differ from those suggested by Glory. Finally, Cummins disagrees with the changes to paragraphs 11, 12 and 25 of the protective order proposed by Glory.

For the reasons set forth below, the Court rules as follows:

A.     The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential – Patent Prosecution Information."

B.     The Court DENIES Glory's request to bar Messrs. Rudisill and Kitch from receiving Confidential – Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.

C.     The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.

D.     The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.

E.     The Court *sua sponte* modifies paragraph 16 of the protective to make clear that it applies to Confidential – Patent Prosecution Information.

I.

We begin with a brief review of the background facts relevant to this motion. Cummins and Glory are competitors with respect to the sale of currency discriminators (which are machines that determine the authenticity and denomination of a stack of currency, and tabulate its value). Since early 1990, Cummins has prosecuted numerous patent applications relating to currency discriminators.[1]

On October 1, 2002, Cummins brought this suit alleging that Glory had infringed United States Patent No. 6,459,806 ("the '806 patent"), issued to Cummins on October 1, 2002. Since that time, Cummins has amended the complaint to add claims of infringement of United States Patent No. 5,291,196 ("the '196 patent"). Messrs. Rudisill and Kitch – along with several other attorneys of the law firm of Jenkins & Gilchrist – have been litigation counsel of record for Cummins from the beginning of this lawsuit. On October 11, 2002, Jeffrey Knoll, of the law firm of Wood, Phillips, Van Santen, Hoffman & Ertel (now known as Wood, Phillips, Kutz, Clark & Mortimer), filed an appearance for Cummins (doc. # 11). In April 2003, three attorneys from the law firm of Winston & Strawn filed additional appearances as counsel of record for Cummins (doc. ## 98-99).

In addition to being counsel of record, Messrs. Rudisill and Kitch have been extensively involved in prosecuting Cummin's patent applications in the Patent and Trademark Office ("PTO"),

---

[1]In an earlier opinion in this case recommending denial of Cummins's motion for preliminary injunction, the Court examined in detail the various applications: (a) Application No. 07/475,111, dated February 5, 1990; (b) Application No. 07/885,648, dated May 19, 1992, which was a continuation-in-part ("CIP") of Application No. '111, and which led to the issuance of the '196 patent on March 15, 1994; (c) Application No. 08/127,334, dated September 27, 1993, which was a CIP of Application No. '648, and which resulted in the issuance of Patent No. 5,467,405 on November 14, 1995; (d) Application No. 08/339,337, dated November 14, 1994, which was a CIP of Application No. '334, and which resulted in the issuance of Patent No. 5,692,067 on November 25, 1997; (e) Application No. 08/841,203, dated April 29, 1997, which was a CIP of Application No. '337, and which resulted in the issuance of Patent No. 6,028,951 on February 22, 2000; and (f) Application No. 09/453,200, which was a CIP of Application No. '203, and which resulted in the issuance of the '806 patent on October 1, 2002.

including the applications which led to the '806 and '196 patents, which are directly at issue in this litigation (*see* Cummins Mem. at 3). Messrs. Rudisill and Kitch also have been involved in prosecuting eight other Cummins patent applications that are related to the '806 and '196, including one patent that was the subject of prior litigation in this district between the parties (the '067 patent) and three patents at issue in a lawsuit currently pending in the Eastern District of Texas (the '067 patent, United States Patent No. 5,815,592, and United States Patent No. 6,381,354 (Glory Mot. at 3 n.5 and Ex. 1).

Messrs. Rudisill and Kitch have submitted unrebutted declarations stating that they are strictly outside patent counsel for Cummins: neither of them is – or ever has been – a shareholder, officer or employee of Cummins (Cummins Mem., Ex. A, ¶ 3; Ex. B, ¶ 3). It also is undisputed that neither Mr. Rudisill or Mr. Kitch is involved in Cummin's product design, marketing, pricing, or in "planning decisions" (*Id.*, Ex. A, ¶ 4; Ex. B, ¶ 4), and that neither has ever been cited for any ethical violation, or for violation of a protective order (*Id.*, Ex. A, ¶ 5; Ex. B, ¶ 5). However, Messrs. Rudisill and Kitch are silent on their roles in advising Cummins on the strategy of what to claim in a patent application, or how to respond when the PTO (as was often the case with the patents in suit and the applications that led to them) raised questions or rejected claim. Cummins does not assert that Messrs. Rudisill and Kitch are merely conduits through which Cummins transmits applications that have been fully formed by Cummins, without their input.

Messrs. Rudisill and Kitch state that they have been principal patent counsel in this litigation, and in that capacity, have devoted substantial time to familiarizing themselves with the patents at issue (which should not have been a time consuming task, since Messrs. Rudisill and Kitch prosecuted the applications that led to those patents) and with Glory's equipment and related

technology (Cummins Mem., Ex. A, ¶ 6; Ex. B, ¶ 6). They do not claim to be the only attorneys representing Cummins who have done so, or to be the only attorneys of record for Cummins who are experienced patent attorneys.[2] Cummins also states that it has not yet shared with "patent prosecutors . . . selected confidential documents" identified by Glory (Cummins Mem. at 2) – thereby indicating that neither Mr. Rudisill nor Mr. Kitch has yet invested time in reviewing and analyzing materials that Glory seeks to protect as "Confidential – Patent Prosecution Information."[3]

## II.

As the party seeking to modify the protective order, Glory has the burden of showing good cause for its requested modifications. *SmithKline Beecham Corp. v. Synthon Pharmaceuticals Ltd.*, 210 F.R.D. 163, 166 (M.D.N.C. 2002); *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501-502 (S.D. Iowa 1992) (citing cases). As explained above, Cummins does not dispute the existence of good cause to modify the protective order to add paragraph 3(c), which creates a new class of Confidential – Patent Prosecution Information.

However, Cummins raises several challenges to Glory's request to bar Messrs. Rudisill and Kitch from viewing Confidential – Patent Prosecution Information. *First*, Cummins argues that the

---

[2] According to its website, the Wood, Phillips firm specializes in intellectual property matters. However, the Wood, Phillips lawyer who appeared for Cummins, Mr. Knoll, no longer is with that firm and no longer appears to be practicing in Chicago; it is unclear whether Wood, Phillips has any continuing role on behalf of Cummins in this case. With respect to the three Winston & Strawn attorneys who are of record, Edward L. Foote is the only one who, judging from the Winston & Strawn website, has experience in litigating intellectual property matters. We do not know whether any other Winston & Strawn intellectual property lawyers are assisting Cummins without having formally appeared in the case.

[3] We note that while this representation is made in Cummins's memorandum, the declarations offered by Messrs. Rudisill and Kitch are silent on this point. Moreover, the representation in Cummins's memorandum differs from what Cummins stated during a December 11, 2003 hearing to set the briefing schedule on this motion. At that time, Cummins stated that it had not shown the materials to both Mr. Rudisill and Mr. Kitch, but that one of them had seen the materials. Given the Court's decision that Messrs. Rudisill and Kitch will be barred from prosecuting certain patent applications if they review Glory's Confidential – Patent Prosecution Information, the Court will require each of them to provide a declaration to Glory within 14 days of this order stating whether they have reviewed such information.

Court should not even address the merits of Glory's request because the request is untimely (Cummins Mem. at 2-3). *Second*, Cummins argues that Glory has failed to establish good cause to place any conditions, other than those already in the protective order governing Confidential and Highly Confidential Information, on the right of Messrs. Rudisill and Kitch to receive that information (*Id.* at 4-11). *Third*, Cummins argues that if any conditions are placed on the right of Messrs. Rudisill and Kitch to receive Confidential – Patent Prosecution Information, the conditions that Glory requests are too broad (*Id.* at 12-14). We address each of these arguments below.

## III.

We begin the analysis with consideration of Cummins's argument that the Court need not address Glory's request to modify the protective order. Cummins argues that the protective order in this case was negotiated by the parties and entered by the Court (with modifications irrelevant to the pending motion) on October 11, 2002, without Glory seeking to include the provisions concerning Confidential – Patent Prosecution Information or access to it that Glory now requests. Cummins argues that at the time the protective order was entered more than one year ago, Glory knew that Messrs. Rudisill and Kitch were both counsel of record and patent prosecution counsel, and that it now is too late for Glory to complain (Cummins Mem. at 2-3). We disagree.

The protective order entered on October 11, 2002 was not written in stone. The stipulated protective order here specifically provides that either party "may apply to the Court for additional protection or disclosure beyond the terms of this Order . . ." (Cummins Mem., Ex. D: 10/11/02 Protective Order, ¶ 23). And even without such a provision, "[c]ourts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties." *SmithKline Beecham,* 210 F.R.D. at 166. Nor do we agree with Cummins that the issue now before

the Court "has been previously decided." The original protective order did not address the question of access by Messrs. Rudisill and Kitch to Glory's Confidential – Patent Prosecution Information, and the issue was not raised with the Court prior to the entry of the protective order. Therefore, that issue was not decided by the Court.

We also reject Cummins's related argument that having agreed to the original protective order, Glory has now waived its right to seek to modify the protective order to address the issue of access by Messrs. Rudisill and Kitch to Confidential – Patent Prosecution Information (Cummins Mem. at 3). We might be more receptive to that argument if, as Cummins suggests, Glory had remained silent for one year after the entry of the protective order before alerting Cummins to Glory's request for this modification. However, Glory raised this issue within a few weeks after the protective order was entered. The Court invited briefing on the issue in an order dated October 31, 2002 (doc. # 18). The parties' attempts to resolve the issue took a backseat to the expedited discovery and briefing on Cummins's preliminary injunction motion (*see* Glory Motion, Ex. 5: 11/21/02 Tr. at 20-21). When the matter was not resolved by the time that the parties completed expedited discovery, the Court suggested that the parties defer the issue until after the preliminary injunction hearing, a suggestion that was acceptable to all parties (*Id.*, Ex. 6: 1211/02 Tr. at 16-17). When Cummins itself later moved to modify the protective order for other reasons, Glory made clear that Glory still sought a modification to the protective order to address the issue of access by Messrs. Rudisill and Kitch to Glory's Confidential – Patent Prosecution Information (*see* doc. # 106: 05/20/03 Glory Mem. at 4).

Thus, Cummins cannot seriously argue that Glory failed to raise this issue soon *after* the entry of the stipulated protective order. Cummins does raise the question of why Glory failed to do

7

so *before* the entry of the protective order (Cummins Mem. at 3). Glory does not address this point either in its motion or reply. However, we note that the stipulated protective order was entered only ten days after Cummins filed suit. The parties did not then have the luxury of time to contemplate everything that should be covered by in the protective order. Cummins had sought expedited discovery and an early hearing on its motion for a preliminary injunction; and, at a status hearing on October 9, 2002, the Court indicated its intent to grant that request (if the parties could not agree to a standstill, or a settlement, or an accelerated trial on the merits). Given the hectic pace of the early stages of the case, the Court can understand if, through oversight, Glory failed to address this issue when the stipulated protective order was presented to the Court.

Moreover, Cummins failed to show that it has suffered any prejudice by the delay in this issue finally being presented to the Court for resolution. Cummins cannot claim that it showed the materials at issue to its patent prosecutors in reliance on the absence of any provision in the protective order prohibiting Cummins from doing so. To the contrary, Glory plainly raised this issue at the time of the initial document production, and Cummins says that pending the resolution of this issue, Cummins has honored Glory's request that Cummins not show Confidential – Patent Prosecution Information to patent prosecutors (Cummins Mem. at 2). In these circumstances, while we do not condone Glory's failure to address the issue of access by Messrs. Rudisill and Kitch to Confidential – Patent Prosecution Information at the time the stipulated protective order was first presented to the Court, we will not penalize Glory for that failure by refusing to address the issue now.

## IV.

In deciding whether to bar or condition the access by Messrs. Rudisill and Kitch to Glory's Confidential – Patent Prosecution Information, we must "balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access." *Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC*, No. 98 C 7408, 1999 WL 618969, at *2 (N.D. Ill. Aug. 9, 1999). A denial of access "cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." *U.S. Steel v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Rather, the "factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, . . ., must govern any concern for inadvertent or accidental disclosure." *Id.*

The inquiry into those "factual circumstances" often centers on whether counsel is engaged in "competitive decisionmaking." *See U.S. Steel,* 730 F.2d at 1468 and n.3; *Interactive Coupon,* 1999 WL 618969, at *2. In this case, the dispute between the parties centers on the threshold question of what is included within the phrase "competitive decisionmaking." Glory argues that Messrs. Rudisill and Kitch long have been – and currently are – involved in shaping and prosecuting patent applications relating to the subject matter of this lawsuit (Glory Motion at 3), and that this conduct constitutes "competitive decisionmaking" (*Id.* at 6). By contrast, Cummins asserts that this competitive decisionmaking is limited to counsel's involvement in a client's "business decisionmaking," and that Messrs. Rudisill and Kitch are not involved in Cummins's business decisions (Cummins Mem. at 9, 10-11).

9

For the reasons that follow, we believe that Glory has the better of this definitional argument. We first explain how we reach that conclusion, and then apply that conclusion to the dispute now before us.

**A.**

We start with the definition of "competitive decisionmaking" provided in *U.S. Steel*:

> The phrase would appear serviceable as a shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

730 F.2d at 1468 n.3. Plainly, the *U.S. Steel* court's listing of client decisions was not limited to "pricing and product design." The court's use of "etc." reveals that those are only examples of the kinds of client decisions that may be made "in light of similar or corresponding information about a competitor." A number of courts have held that advice by counsel in prosecuting patent applications falls within the scope of "competitive decisionmaking."

In *Motorola, Inc. v, Interdigital Technology Corp.*, No. 03-488-LON, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994), the plaintiff moved to bar defendant's trial counsel – who also prosecuted patent applications for the defendant – from access to the plaintiff's confidential information. The court reasoned that prosecuting patent applications involves competitive decisionmaking activities: "[t]he process of prosecuting patent applications . . . involves decisions of scope and emphasis, . . . '[Patent counsel] can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die.'" 1994 U.S. Dist. LEXIS 20714, at *11. The court further found

that the risk that the plaintiff's patent counsel would inadvertently use the defendant's confidential information was substantial:

> Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped 'untainted,' another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the [defendant's] attorneys may be.

*Id.* at *14-15. Based on this analysis, the court barred defense counsel who received the plaintiff's confidential information from prosecuting any of the defendant's patent applications "relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion of the present litigation, including appeals." *Id.* at *20. The court held that this limitation properly balanced the risk of inadvertent disclosure with the hardship to the defendant from that limitation. *Id.* at *15-16.

In *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 50 U.S.P.Q. 1783 (D. Nev. 1998), the court was presented with a situation in which the defendant's trial counsel also prosecuted patent applications for the defendant. As do Messrs. Rudisill and Kitch here, the patent counsel in *Mikohn* disavowed any relationship with the defendant as an officer, board member or employee, or any role in advising the defendant on business strategies regarding product design, development, pricing, or marketing. However, finding the reasoning in *Motorola* persuasive, the court held that counsel's admitted role in prosecuting patent applications, and providing legal advice and counseling in the field of intellectual property, constituted involvement in competitive decisionmaking:

> The Marger firm is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. . . . [I]n light of the claims made in this lawsuit, the advice rendered by the Marger firm is intensely competitive.

50 U.S.P.Q. at 1785. The court in *Mikohn* barred defendant's patent counsel from access to the plaintiff's confidential information, finding that the hardship to defendant was mitigated by the presence of other patent counsel in the case representing the defendant and, in any event, was outweighed by the risk of unauthorized disclosure.

In *Interactive Coupon*, the court was presented with a request to bar certain plaintiff's attorneys, who were also prosecuting patent applications for the plaintiff, from reviewing the defendant's confidential documents. The court reviewed the analysis in *Motorola* and *Mikohn*, and posed the central question as whether the plaintiff's law firm's "prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process." 1999 WL 618969, at *3. The court answered that question in the affirmative, explaining that competitive decisionmaking "is not limited to decisionmaking about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted." *Id.* Although patent counsel stated that they did not participate in the plaintiff's competitive business decisions, product pricing or design, and general business planning or strategizing, the court found that these statements failed to address the role of counsel in prosecuting and shaping patent applications. *Id.* As a result, the court ordered that any patent counsel who "are privy to confidential information obtained from defendant in discovery shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals." *Id.* at *4.[4]

---

[4] In its reply, Glory cites two other decisions that also found patent prosecutions to be included with "competitive decisionmaking," and that barred counsel who received an adversary's confidential information from prosecuting related patent applications for a period of time. *See Chan v. Intuit, Inc.*, 218 F.R.D. 659 (N.D. Cal. 2003); *In Re Pabst Licensing*, No. MDL 1278, 2000 WL 554219, at *4 (E.D. La. May 4, 2000) ("[I]t is clear that the advice and participation of the Pabst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the non-Pabst parties

The Court finds the discussion of "competitive decisionmaking" in these opinions persuasive, as it reflects the reality of the way in which patent applications are prosecuted. As this case vividly demonstrates, patent applications are not always fully formed and unchanging when they are filed. *See* note 1, *supra.* Patent applications may be revised in order to respond to a number of factors that may arise, such as concerns expressed by a PTO examiner – or information about other products that have entered or are about to enter the market.

We would expect patent prosecution counsel to be intimately involved in deciding how to shape the original application, or how later to revise it. It is that intimate involvement in the shaping and revision of patent applications that provides for the risk that patent counsel inadvertently will use information obtained from a party in patent litigation in shaping the application. As the *Motorola* court quite properly observed, this is not a criticism of the ethics of any particular attorneys or of the bar in general. Rather, it is a recognition of the limits of human beings to completely compartmentalize the multiple sources from which they obtain information.

The Court has considered Cummins's criticisms of the competitive decisionmaking analysis in *Motorola, Mikohn,* and *Interactive Coupon,* but finds them unpersuasive. We do not agree that *Motorola* and *Mikohn* give "face time" to *U.S. Steel*, but disregarded the *U.S. Steel* admonition by relying on a general assumption that disclosure of confidential information to patent prosecution counsel will run the risk of inadvertent disclosure (Cummins Mem. at 7). Rather, those decisions examined the role of patent attorneys in prosecuting patents, and concluded that their roles – and not the mere label of "patent prosecutor" – brought them within the scope of what *U.S. Steel* referred to as competitive decisionmaking. Nor, in the Court's view, did the *Mikohn* court "essentially ignore[]"

confidential information").

13

affidavits stating that the patent prosecutors were not engaged in competitive decisionmaking (Cummins Mem. at 8). Rather, the *Mikohn* court found that with respect to what the attorneys did in prosecuting the patent applications, the issue the court considered central, the affidavits were "so general as to be virtually meaningless." 50 U.S.P.Q. at 1786.

Cummins also argues that the definition of competitive decisionmaking employed by these decisions is too broad, and urges that the Court instead follow the approach in *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762 (D. Md. 2003). In that case, the court -- calling the decision a "close call," *id.* at 773 -- rejected the defendants' argument that the plaintiff's patent prosecution counsel was a competitive decisionmaker. Glory correctly distinguishes *MedImmune* on the ground that, unlike the case in *Mikohn* and here, there was no indication in *MedImmune* that the plaintiff's counsel "was currently prosecuting patents on the exact same subject matter of the litigation" (Glory Reply at 5, quoting *MedImmune*, 271 F. Supp. 2d at 775 n.14).

However, that distinction is not a complete answer to the *MedImmune* analysis, because the court there directly expressed its disagreement with the *Interactive Coupon* analysis, on the ground that it "amounts to a *per se* prohibition on patent counsel" acting as both trial counsel and patent prosecutor. *Id.* at 774 n.13. In our view, the *MedImmune* court fails to come to grips with the role of a patent prosecutor in shaping the way in which a patent application is written, or how role of the patent prosecutor, when combined with the knowledge of a competitor's confidential information gained through the litigation process, creates a risk of inadvertent use of that information to advance a client's patent prosecution. We are not persuaded by *MedImmune* that the courts in *Motorola, Mikohn,* and *Interactive Coupon* were incorrect in their analysis of the role performed by patent

prosecutors, or in their conclusion that this role brings them within the scope of competitive decisionmaking that creates a risk of inadvertent disclosure of confidential information.

That said, we understand the concern expressed by the *MedImmune* court about creating a *per se* rule that patent prosecutors cannot act as litigation counsel. On that point, we have three observations. *First*, as we will explain below, we believe it would be rare that patent prosecution counsel would be absolutely barred from reviewing confidential information, as was the case in *Mikohn* (the opinion does not disclose whether some other alternative had been proposed). Rather, under the *Interactive Coupon* approach, the party could choose not to disclose confidential information to patent prosecution counsel, in which case that counsel could continue to prosecute patent applications; or, the party could choose to reveal confidential information to patent prosecution counsel, and accept limitations on that attorney's ability to prosecute certain patent applications for a period of time. *Second*, any limitation would apply as to the prosecution of patent applications relating to the subject matter of the patents in suit; it would not bar counsel from prosecuting unrelated patent applications in the PTO. *Third*, to the extent that the *Interactive Coupon* analysis would make it difficult for patent counsel to act unfettered both as litigation counsel and prosecution counsel, that difficulty is the proper consequence of the need to protect against inadvertent disclosure.

## B.

The application of this analysis to the present case is straightforward. Cummins does not dispute that Messrs. Rudisill and Kitch have been – and currently are --extensively involved in prosecuting patent applications related to the subject matter of this litigation. The declarations submitted by Messrs. Rudisill and Kitch state that they have no role in Cummins's product design,

marketing, pricing or planning decisions, and have no affiliation with Cummins other than as its counsel. But, these declarations suffer from the same shortcoming as the affidavits offered in *Mikohn* and *Interactive Coupon*: the Rudisill and Kitch declarations are silent about their respective roles in shaping the many patent applications, revisions, and responses to PTO examiner questions that they have handled for Cummins, and that are directly related to the subject matter of this litigation.

Cummins has not attempted to argue that Messrs. Rudisill and Kitch have no role in shaping Cummins' patent applications and how they are prosecuted; to the contrary, Cummins concedes that they have been "centrally involved" in those prosecutions (Cummins Mem. at 3). Rather, Cummins argues that competitive decisionmaking should be defined in a way that does not encompass that role. That argument has failed, and thus Cummins is left with no other argument to avoid the conclusion that Messrs. Rudisill and Kitch are involved in competitive decisionmaking as that term was defined in *Motorola, Mikohn* and *Interactive Coupon,* and as the Court has defined it here.

## V.

In light of the determination that Messrs. Rudisill and Kitch are involved in competitive decisionmaking, the Court considers what limitations should be placed on their access to Glory's Confidential – Patent Prosecution Information. Glory seeks to bar those attorneys from having any access to that information; in the alternative, Glory asks that the Court order that Messrs. Rudisill and Kitch, or any other attorneys, who receive such information "shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals."

We reject Glory's request to bar Messrs. Rudisill and Kitch from having any access to the Confidential – Patent Prosecution Information. In balancing the risk of inadvertent disclosure against the hardship to Cummins from such a categorical exclusion order, the Court is mindful that "disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) (quoting *Schiessle v. Stephens*, 717 F.2d 419-20 (7th Cir. 1983)). While an order barring Messrs. Rudisill and Kitch from access to Glory's Confidential – Patent Prosecution Information would not formally bar them from continuing to participate in the litigation, such an order might limit their ability to fully represent and advise Cummins. Whether the hardship resulting from such an order would be of the nature and extent claimed by Cummins is uncertain. But, any hardship to Cummins created by an order barring access altogether would be unwarranted, because such a broad order would not be reasonably tailored (much less, absolutely necessary) to the risk of inadvertent disclosure that Glory seeks to address. The risk created by giving Messrs. Rudisill and Kitch access to that information is not that this will create unfairness to Glory in defending this lawsuit, but that Glory will be injured by the inadvertent use of that information by Messrs. Rudisill and Kitch when prosecuting Cummins's patent applications.

Glory argues that Cummins has other attorneys with patent experience who have appeared of record in the case (Glory Motion at 11), a factor that was of significance to the court in *Mikohn* in deciding to bar the defendant's patent prosecution counsel from access to the plaintiff's confidential information. *Mikohn*, 50 U.S.P.Q. at 1786. However, it is unclear whether the Court in *Mikohn* was presented with an alternative proposal for addressing the risk of inadvertent disclosure. In any event, we do not believe that the presence of other counsel for Cummins warrants

the entry of an overly-broad order that categorically bars Cummins's lead litigation patent counsel from any access to Glory's Confidential – Patent Prosecution Information.

Rather, we adopt the alternative approach suggested by Glory, and utilized by the courts in *Motorola* and *Interactive Coupon*: allowing Messrs. Rudisill and Kitch (or other patent counsel) to receive Glory's Confidential – Patent Prosecution Information, but limiting the ability of attorneys who receive that information to prosecute certain patent applications. Anticipating the possibility of this result, Cummins asks that Glory's proposed limitation be revised in two ways.

*First,* Cummins argues that the restriction should not apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit," but instead should be limited only to the prosecution of any patent application "that specifically disclose[s] or claims the contents or the substance of the information contained in a reviewed document marked 'Confidential – Patent Prosecution Information" (Cummins Mem. at 12 and Ex. H). We disagree. The language proposed by Cummins is too narrow: it would allow a Cummins attorney who receives Glory's Confidential – Patent Prosecution Information to use that information to prosecute a Cummins patent application, so long as the application does not "specifically disclose or claim" Glory's confidential information – even if the application was generally influenced or shaped by that information. That kind of limitation does not sufficiently address the risk of inadvertent disclosure. Moreover, although Cummins argues that is does not understand what Glory means by suggesting that the limitation apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit" (Cummins Mem. at 12), that is the language routinely employed by other courts when imposing such a restriction. *See Pabst*, 2000 WL 554219, at *4 (barring prosecution of patent applications "pertaining to the subject matter of the patents in suit"); *Interactive* Coupon, 1999 WL 618969, at

*4 (barring prosecution of patent applications "relating to the subject matter of the patent in suit"); *Motorola*, 1994 U.S. Dist. LEXIS 20714, at *19 (barring prosecution of patent applications "relating to the broad subject matter of the patents in suit"). That language is appropriate here as well; we therefore adopt Glory's proposal on this point.

*Second*, Cummins argues that the time period of the restriction should be either the pendency of the litigation and a period of one year after the conclusion of the litigation, including appeals (the period proposed by Glory), *or* "the time at which such information contained in the documents marked 'Confidential – Patent Prosecution' legitimately becomes publicly known . . .," whichever is earlier (Cummins Mem. at 12-13 and Ex. H). We note, again, that the time limitation proposed by Glory is the same limitation adopted by the *Motorola* and *Mikohn* courts. *Interactive Coupon*, 1999 WL 618969, at *4; *Motorola*, 1994 U.S. Dist. LEXIS 20714, at *19. A significant problem with Cummins's proposal is that if Cummins's patent counsel receive Glory's Confidential – Patent Prosecution Information and some but not all of it is determined to be publicly known, and thus not truly confidential, we do not see how the Court could be confident that patent counsel was utilizing only the non-confidential information in prosecuting the patent, and was not (albeit inadvertently) having his or her approach to the patent prosecution influenced by the Confidential – Patent Prosecution Information. The difficulty of separating out different sources of information, and ensuring that certain sources are not used, is what gives rise to the risk of inadvertent disclosure in the first place. *Motorola*, 1994 U.S. Dist. LEXIS 20714, at *14-15. Cummins's proposal would lead the parties and the Court down the path that the order is designed to avoid, and we therefore reject it.

Accordingly, we will amend the stipulated protective order to include paragraph 9(b), which will read as follows:

> Confidential – Patent Prosecution Information may be shown only to persons qualified to receive Highly Confidential Information. Any person who receives Confidential – Patent Prosecution Information shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals.

## VI.

The only remaining changes to the stipulated protective order that remain in dispute are with respect to paragraphs 11, 12(c) and 25. We address in turn the parties' respective proposals for those paragraphs.

## A.

Paragraph 11 of the protective order states that "[e]ither party may disclose Confidential or Highly Confidential Information in a Court proceeding upon consent of the designating party or permission of the Court." Glory proposes to amend that paragraph solely to include a reference to the new category of Confidential – Patent Prosecution Information. Cummins agrees with that amendment, which will be adopted.

However, Cummins also proposes another change to paragraph 11, which Glory opposes. Cummins seeks to add the proviso that "information disclosed at an open Court proceeding will become public knowledge and persons present at any Court proceeding where Confidential – Patent Prosecution Information is disclosed will not be subject to the patent prosecution restrictions of paragraph 9 due to their presence" (Cummins Mem., Ex. H). Once again, this Cummins proposal would create the difficult problem of determining whether Cummins patent counsel was prosecuting

a patent application using Confidential – Patent Prosecution Information that remained private or information that had become public. For the reasons discussed above with respect to Cummins's proposal in paragraph 9 concerning the time limitation of the restriction, the Court rejects Cummins's proposal for amending paragraph 11.

## B.

The parties largely agree on an amendment to the protective order that would add a new paragraph 12(c); their only disagreement is with respect to the highlighted clause set forth below, which Glory seeks over Cummins's objection:

> The substance or content of any Confidential – Patent Prosecution Information, as well as notes, abstracts, copies, summaries and memoranda relating thereto shall not be disclosed to *or be accessible to* anyone other than a person qualified to receive Confidential – Patent Prosecution Information pursuant to this Protective Order, and any such notes, abstracts, copies summaries and memoranda shall be treated as Confidential – Patent Prosecution Information in all respects.

This additional language proposed by Glory tracks the language in paragraphs 12(a) and 12(b) governing Confidential and Highly Confidential Information. Cummins has offered no reason why the same language should not apply to Confidential – Patent Prosecution Information, which is a subset of Highly Confidential Information. Accordingly, we adopt the version of new paragraph 12(c) proposed by Glory.

## C.

Paragraph 25 of the protective order provides that restrictions applicable to Confidential and Highly Confidential Information do not apply to information which already is public knowledge, which becomes public knowledge other than as a result of disclosure by the receiving party, or that the receiving party obtains by legitimate means independently of the producing party. Each side

agrees that this provision should be revised to include the new category of Confidential – Patent Prosecution Information. Where they differ is on the following additional language that Glory proposes to add at the end of paragraph 25, over Cummins's objection:

> The party seeking to use information designated as Confidential, Highly Confidential, or Confidential – Patent Prosecution Information, shall have the burden of providing that it is entitled to the use of such information.

The Court sees no need for this additional sentence proposed by Glory. In the event that information designated with one of the levels of confidentiality becomes public by one of the means specified in paragraph 25, then the receiving party would have the right to question the confidentiality designation. Paragraph 16 of the protective order already provides a mechanism for doing so: it states that if a party objects to the designation of information as Confidential or Highly Confidential, then the designating party bears the burden of showing the propriety of the confidentiality designation. That allocation of the burden of proof recognizes that a party asserting confidentiality is asking for the document to be treated in a way that is contrary to the ordinary course of public litigation, *see generally Citizens First Nat. Bank v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999), and should be in the best position to show why the document is entitled to special treatment. Glory offers no explanation for its proposal to shift the burden of proof to the challenging party, and the Court declines to do so.[5]

---

[5] Paragraph 16 of the original protective order does not specifically call out Confidential – Patent Prosecution Information, which is a subset of Highly Confidential Information. To avoid any future confusion about the scope of paragraph 16, the Court *sua sponte* will modify paragraph 16 of the protective order to include challenges to the designation of information as Confidential – Patent Prosecution Information.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Glory's motion to amend the protective order as follows:

A.  The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential – Patent Prosecution Information."

B.  The Court DENIES Glory's request to bar Messrs. Rudisill and Kitch from receiving Confidential – Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.

C.  The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.

D.  The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.

E.  The Court *sua sponte* modifies paragraph 16 to make clear that it applies to Confidential – Patent Prosecution Information.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: December 31, 2003

23